IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FIRST SPECIALTY INSURANCE
CORPORATION,

        Plaintiff,

   v.

ADMIRAL INSURANCE COMPANY,

        Defendant.

No. CV 07-408-MO

OPINION AND ORDER

**MOSMAN, J.,**

      The parties present two competing motions–Admiral Insurance Company's Motion to Dismiss (#9) and First Specialty Insurance Corporation's Motion to Remand (#11). Admiral Insurance Company ("Admiral") argues this case should be dismissed in favor of a previously filed state action involving the same basic parties and issues. On the other hand, First Specialty Insurance Corporation ("FSIC") argues this case must be remanded because exclusive jurisdiction lies with Washington County Circuit Court. Because the motion for remand raises jurisdictional issues, I address it first.

      The motion to remand presents two issues. First, whether the claims asserted in this coverage dispute relate to the interpretation of the subcontract agreement between the parties'

respective insureds, requiring application of that agreement's forum selection clause. Second, whether FSIC and Admiral, both non-parties to the subcontract agreement, are bound by that agreement's forum selection clause. Several courts, including the Ninth Circuit, have addressed these issues. *See, e.g., Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*, 28 F.3d 600 (7th Cir. 1994); *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427 (N.D. Cal. 1997).

In *Manetti-Farrow*, the plaintiff, a California corporation, entered into an exclusive dealership agreement with Gucci Parfums. *Manetti-Farrow*, 858 F.2d at 511. That agreement included a forum selection clause giving the Court of Florence sole jurisdiction over any controversy regarding the contract. *Id.* Years later, Gucci Parfums terminated the dealership agreement and brought suit against the plaintiff in Florence for breach of contract. *Id.* Subsequently, the plaintiff filed suit in federal court in Northern California, alleging several tort claims against the Gucci parent company, several of its subsidiaries, including Gucci Parfums, and several individual directors and board members. *Id.* The district court granted defendants' motion to dismiss based on the forum selection clause in the underlying contract. *Id.* at 511-12. On appeal, the plaintiff contended the scope of the forum selection clause did not cover the tort claims asserted in its complaint because such claims do not relate to the "interpretation" or "fulfillment" of the contract. *Id.* at 513-14.

The Ninth Circuit disagreed, holding that the tort claims at issue related to "'the central conflict over the interpretation'" of the distribution agreement and were, therefore, within the scope of the forum selection clause. *Id.* at 514. In reaching its decision, the court explained that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims *relates* to interpretation of the contract." *Id.* (emphasis added). Under that standard, the court reasoned that each of the tort claims "relates in some way to rights and duties enumerated in the exclusive dealership contract," and that "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* With respect to the

defendants who were not parties to the underlying contract, the court found that such non-parties could be bound by a forum selection clause if their alleged conduct is "closely related to the contractual relationship." *Id.* at n.5. The court then upheld the district court's dismissal of the plaintiff's complaint. *Id.* at 515.

In *Graham Technologies*, the defendant entered into a personal services contract with John Graham on behalf of the plaintiff. 949 F. Supp. at 1429. That agreement contained a forum selection clause providing the federal and state courts of New York County, New York with exclusive jurisdiction over all disputes under the contract. *Id.* The relationship between the parties deteriorated, and plaintiff filed copyright infringement, unfair competition, and false advertising claims against defendant in federal court in the Northern District of California. *Id.* at 1430-31. The defendant filed a motion to dismiss or to transfer venue, arguing the appropriate venue for the action was the Southern District of New York due to the forum selection clause in the personal services contract. *Id.* at 1428.

The plaintiff opposed enforcement of the forum selection clause, contending that (1) it did not raise any contractual issues related to the personal services contract–that is, it sought to vindicate its rights under the Copyright Act; and (2) it was not a party to the contract. *Id.* at 1432-32. The district court held the scope of the forum selection clause covered the plaintiff's copyright infringement claims. *Id.* at 1433. It reasoned the resolution of those claims required the interpretation of the personal services agreement. *Id.* It found the copyright claims related to the rights and duties enumerated in the contract. *Id.* For example, several paragraphs of the agreement assigned the defendant with copyright ownership of any software developed. *Id.*

Noting that "'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses,'" the district court further held that the plaintiff was bound by the forum selection clause. *Id.* at 1434. (citation omitted). Following *Manetti-Farrow*, the district court reasoned that the plaintiff's actions were closely related to the contractual relationship. *Id.* It found that the plaintiff was the assignee of any copyrights

PAGE 3 - OPINION AND ORDER

developed by Mr. Graham during his work for the defendant. *Id.* It also found that the resolution of the case depended on the whether any of the computer programs at issue were developed under the terms of the personal services contract–whether developed by Mr. Graham or by someone with whom Mr. Graham consulted. *Id.* The district court then transferred the case to the Southern District of New York. *Id.* at 1434-35.

Turning to the first issue presented here, I find the claims alleged by FSIC in this case relate to the interpretation of the subcontract agreement between the parties' respective insureds. The subcontract agreement required FSIC's insured, Excel, to obtain and to provide proof of insurance, including general commercial liability insurance. Ex. 1 at 3, Pl.'s Resp. to Def.'s Mot. to Dismiss. It further required that Excel's policy name Admiral's insured, HMV and Amberwood, as additional insureds on that policy and that Excel's policy be primary to any insurance HMV or Amberwood may carry independently. *Id.* However, the subcontract also states that "the laws of the state of Oregon shall govern as to all matters arising under or relating to this [a]greement," *id.* at 4, and, under Oregon law, that provision may be void. Or. Rev. Stat. 30.140(1) provides:

> any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

The subcontract further states that "should any provision or portion [] of this [a]greement at any time be in conflict with any law, ruling, or regulation, then such provision shall continue in effect only to the extent that it remains valid." *Id.*

As such, the resolution of this case depends on whether the additional insured requirement in the subcontract is void. If it is void under Oregon law, Amberwood would not be a cognizable additional insured under the FSIC policy and FSIC would have no obligation to Admiral. The coverage dispute therefore requires interpretation of the subcontract and comes within its forum selection clause. *See Manetti-Farrow*, 858 F.2d at 514; *Graham Tech.*, 949 F.

PAGE 4 - OPINION AND ORDER

Supp. at 1434.

For the second issue, although the factual context is slightly different, I find the rationale of the cases cited above equally applies. As those cases teach, a range of transaction participants, including non-parties, should be bound by forum selection clauses of an underlying agreement if their conduct is "closely related to the contractual relationship." *Manetti-Farrow*, 858 F.3d at 514 n.5; *Graham Tech.*, 949 F. Supp. at 1434. The fact that either one or both parties was not a signatory to the underlying contract is not dispositive.

Here, FSIC's and Admiral's conduct is born out of the contractual relationship between their respective insureds. As explained above, the parties' conduct, including their respective obligations associated with this coverage dispute, directly stems from the additional insured requirement of the subcontract agreement. Absent that requirement, FSIC's insured would likely not have placed Admiral's insureds as additional insureds on its policy and would likely not have made its policy primary to Admiral's policy. As such, I find that both FSIC's and Admiral's conduct "is so closely related to the contractual relationship" between Excel and Amberwood that the forum selection clause of the subcontract agreement is enforceable against both. *See Manetti-Farrow*, 858 F.3d at 514 n.5; *Graham Tech.*, 949 F. Supp. at 1434.

Accordingly, this case is REMANDED to Washington County Circuit Court. Admiral's motion to dismiss is therefore DENIED as moot.

IT IS SO ORDERED.

DATED this  22nd  day of June, 2007.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court